Board erred in its rejection of claims 2 and 4 of the Wu '047 Patent and claims 9-11 of the Wu '411 Patent Application and reverses the Board's July 16, 1996 opinion as to those claims. An appropriate Order follows.

## ORDER

For the reasons set forth in the Memorandum Opinion above, it is hereby ORDERED that the Patent and Trademark Office Board of Patent Appeals July 19, 1996 decision in *Wang v. Wu*, Interference No. 102,654, as to claims 2 and 4 of the Wu '047 Patent and claims 9-11 of the Wu '411 Patent Application is REVERSED; and it is further

ORDERED that the Patent and Trademark Office Board of Patent Appeals July 19, 1996 decision in *Wang v. Wu*, Interference No. 102,654, as to claims 1 and 3 of the Wu '047 Patent is AFFIRMED.

---

U.S. District Court
Middle District of North Carolina

Victus Ltd. v. Collezione Europa U.S.A. Inc.

No. 2:97CV00138

Decided August 3, 1998

## PATENTS

1. Infringement — Design patents (§120.22)

   Patent construction — Prosecution history estoppel (§125.09)

   Plaintiff's design patent is properly construed as limited to table having wooden parquet top, and it is therefore not literally infringed by defendant's glass-topped tables, even if accused tables appropriate leg and apron features considered novel by patentee, since tables with glass tops were restricted out of application during prosecution of plaintiff's patent, and since all drawings in patent that show table tops depict them as wooden parquet tops; plaintiff's contention that scope of patent is not limited by patentee's withdrawal of material in response to restriction requirement is without merit in present case, in which accused product copied design originally submitted but subsequently removed in response to restriction requirement.

2. Infringement — Defenses — Prosecution history estoppel (§120.1105)

   Infringement — Design patents (§120.22)

   Prosecution history estoppel bars plaintiff from asserting that scope of equivalents for design patent for table encompasses accused tables having glass tops, since plaintiff removed glass-topped version of its table from application in response to restriction requirement during prosecution of patent in suit, since applicability of prosecution history estoppel is not limited to those cases in which claim was amended to avoid prior art or to overcome indefiniteness objection, and since plaintiff's surrender of glass top version of its table was unmistakable enough that public, including defendant, could reasonably rely upon it.

   Particular patents — Designs — Table
   369,045, Lenoir, table, summary judgment of non-infringement granted.

---

Action by Victus Ltd., d/b/a Master Design Furniture, against Collezione Europa U.S.A. Inc. for design patent infringement. On defendant's motion for partial summary judgment of non-infringement. Granted.

Related decision 48 USPQ2d 1150.

Gilbert J. Andia Jr. and Howard A. MacCord Jr., of Rhodes, Coats & Bennett, Greensboro, N.C., for plaintiff.

Peter J. Juran, of Blanco, Tackabery, Combs & Matamoros, Winston-Salem, N.C., and Nicholas Mesiti, of Heslin & Rothenberg, Albany, N.Y., for defendant.

Tilley, J.

This case is currently before the Court on Defendant's Motion for Partial Summary Judgment on the Issue of Non-Infringement [Doc. #7]. For the reasons set out below, this Motion is GRANTED.

## FACTS

Plaintiff Victus, Ltd. d/b/a Master Design Furniture ("Master Design") is a corporation which produces furniture and sells it, among other places, at its place of business in Greensboro, North Carolina. Defendant Collezione Europa U.S.A., Inc. ("Europa"), is a corporation which produces furniture and sells it, among other places, at its place of business in High Point, North Carolina.

Master Design is the assignee of United States Design Patent No. 369,045, issued on April 23, 1996, and titled "Table." Master Design attempted to include within this patent versions of the table with wooden parquet tops, with glass tops, and with glass tops and wooden parquet shelves beneath. The patent

EXHIBIT B

examiner rejected this attempt, and the final patent drawings depict several variations of a table, all with the same grooved leg and apron design and all with similar wooden parquet tops.[1]

Europa sells a group of tables, known as T1195 tables, which have the same or a very similar grooved leg and apron design as that found in Master Design's Design Patent No. 369,045, but which have glass tops. Master Design filed suit in this Court on February 17, 1997, alleging that Europa's tables infringe its patent.

## JURISDICTION AND VENUE

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1338(a). Venue is proper pursuant to 28 U.S.C. § 1400.

## DISCUSSION

Europa has moved for partial summary judgment on the issue of non-infringement. Summary judgment is proper only if there is no genuine issue as to any material fact. The party moving for summary judgment has the burden of: (1) pointing to deficiencies in the record as to matters upon which the opposing party has the burden of proof such that the opposing party cannot prove its claim or defense, or; (2) showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law. The party opposing the motion for summary judgment may not merely rest on its pleadings, but must provide evidence or point to evidence already in the record, properly authenticated pursuant to Rule 56(e), that would be sufficient to support a jury verdict in its favor. *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 [43 USPQ2d 1695] (Fed. Cir. 1997). The test to be applied in determining sufficiency of the evidence on the questioned point, therefore, mirrors that applied at the directed verdict (now "judgment as a matter of law") stage of a trial. *See U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 702-03 [8 USPQ2d 1885] (Fed. Cir. 1988).

Master Design argues that Europa's tables literally infringe Master Design's patent or, in the alternative, that Europa's tables infringe Master Design's patent under the doctrine of equivalents. Europa's tables do not literally infringe Master Design's patent because they do not contain all of the patent's elements, and prosecution history estoppel bars Master Design from reliance on the doctrine of equivalents. Therefore, partial summary judgment for Europa on the issue of non-infringement is proper as a matter of law.

### Literal Infringement

Determining literal infringement of a design patent is a two-step process. First, the claim must be construed to determine its meaning and scope. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 [36 USPQ2d 1417] (Fed. Cir. 1995). Claim construction is a question of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 1387, 134 L.Ed.2d 577 [38 USPq2d 1461] (1996) [hereinafter "*Markman II*"]. When construing a claim, a court should consider prior art as well as prosecution history. *See Elmer*, 67 F.3d at 1577; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 [34 USPQ2d 1321] (Fed. Cir. 1995) (en banc) [hereinafter "*Markman I*"], aff'd, *Markman II*.

Second, the properly construed claim must be compared to the accused design. *See Elmer*, 67 F.3d at 1577. This comparison is made according to the following test:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* (quoting *Gorham Co. v. White*, 81 U.S. (14 Wall) 511, 528, 20 L.Ed. 731 (1871)). An accused design must also appropriate the novel ornamental feature(s) of a patented design. *See id.* Whether infringement of a properly construed patent has occurred is a question of fact. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 [25 USPQ2d 1913] (Fed. Cir. 1993).

The construction of Master Design's patent is the key to determining whether Europa's tables infringe the former's patent. In light of the prosecution history and the drawings finally included with Master Design's patent, its construction must be limited to tables with a wooden parquet top. Europa's tables cannot literally infringe the patent because they have glass tops rather than wooden parquet tops.

[1] The prosecution history of Master Design's patent is susceptible to only one reasonable interpretation — that Master De-

---

[1] The prosecution history of this patent is discussed more fully *infra* at 4-6.

sign, while it may have wanted to include tables with glass tops within the scope of its patent, did not succeed in doing so. Master Design's original patent application contained sixteen different drawings. (*See* Def.'s Answer Ex. A.) These drawings depicted tables with a number of different tops, some of which had shelves and some of which did not. (*See id.*) The patent examiner found that these drawings depicted three different groups of inventions, one with wooden parquet tops, one with glass tops and wooden parquet shelves, and one with glass tops. (*See id.* at Paper No. 4.) The examiner required election of one of these groups pursuant to 35 U.S.C. § 121. (*See id.*) Master Design attempted to convince the examiner that the leg and apron design shared by the tables in all of the drawings constituted a single inventive concept that united the members of the three groups, (*see id.* at Resp. to Paper No. 4), but the examiner rejected this argument and accepted Master Design's provisional election of the group composed of the tables with wooden parquet tops, (*see id.* at Examiner's Action, Paper No. 6).

In response to the examiner's request for new drawings of the elected group, Master Design again attempted to include glass-top tables within its patent by submitting two new drawings depicting tables with glass tops. (*See id.* at Amendment in Resp. to Paper No. 6.) The examiner called these drawings "improper and confusing since . . . [they] show[ed] embodiments . . . which were restricted out of the instant application." (*Id.* at Examiner's Action, Paper No. 8 at 1.) Master Design finally conceded that the drawings depicting glass tops were improper and substituted drawings with wooden parquet tops. (*See id.* at Resp. to Paper No. 8.) Only after this substitution did the examiner grant Master Design a Notice of Allowability. (*See id.* at Notice of Allowability, Paper No. 10.) This summary of the prosecution history makes clear that Master Design tried and failed to include glass-top tables within the scope of Design Patent No. 369,045.

The scope of a design patent is also determined by reference to the drawings in the patent. *See Elmer*, 67 F.3d at 1577; *Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 [27 USPQ2d 1297] (Fed. Cir. 1993). None of the eight drawings included in Patent No. Des. 369,045 depict tables with glass tops; all those drawings that show table tops depict them as wooden parquet tops. (*See* Def.'s Answer Ex. A.) Master Design could have patented a design that did not encompass an entire table. *See In re Zahn*, 617 F.2d 261, 267 [204 USPQ 988] (C.C.P.A. 1980)[2] By including the drawings depicting wooden parquet tops, Master Design effectively limited the scope of its patent to tables with wooden parquet tops. *See Elmer*, 67 F.3d at 1577. The drawings included in the final patent therefore support the conclusion suggested by the prosecution history.

Master Design cites the cases of *Arner v. Sharper Image Corporation*, 39 U.S.P.Q.2d 1282 (C.D. Cal. 1995) and *Sun Hill Industries Inc. v. Holiday Trims Inc.*, 20 U.S. P.Q.2d 1851 (E.D.N.Y. 1991) for the proposition that the scope of a patent is not limited by a patentee's withdrawal of material in response to a restriction requirement. In *Arner*, the defendant argued that its design could not infringe on plaintiff's patent based on the patent's prosecution history, because its design was even more different from the patent than a variation that the plaintiff had surrendered during prosecution in response to the examiner's finding that the variation required a second patent. 39 U.S.P.Q.2d at 1293. The *Arner* court held that "this argument confuses the factual issue of design patent *infringement* with the legal issue of interpretation of claims," but did not delineate how the argument confused those issues, did not explain why the design surrendered by the plaintiff was irrelevant to the claim's construction, and cited no authority for the proposition that the defendant's argument was incorrect. *Id.* This Court therefore chooses not to follow *Arner*.

*Sun Hill* is simply not on point. There, the court rejected the argument that because a patentee's original application contained designs that were independently patentable, any variation of the patented design could not constitute infringement. *See* 20 U.S.P.Q. 2d at 1853. Neither of these cases involved a situation like that presented by this case, where an accused product copied a design originally submitted but subsequently removed in response to a restriction requirement. *See Arner*, 39 U.S.P.Q.2d at 1292-93; *Sun Hill*, 20 U.S.P.Q.2d at 1853. Neither case is instructive on the issue of claim construction as presented in this case.

Master Design also refers to the Federal Circuit's holding that "the fact of separate patentability presents no legal or evidentiary presumption of noninfringement." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 [38 USPQ2d 1126] (Fed. Cir.

---

[2] Master Design must have been aware of this fact, as it cited and distinguished as prior art two patents for table tops only. (*See* Def.'s Answer Ex. A; Def.'s Supp. Br. Exs. B, C.)

1996). It is not necessary, however, to rely on any presumption of non-infringement to conclude that Master Design's patent does not include glass-top tables, It is the prosecution history and the drawings included with the patent, not any presumption, that mandates this conclusion.

It is not necessary to determine the exact scope of Design Patent No. 369,045 to decide that Europa's tables do not literally infringe it. Given the patent's prosecution history and the drawings included with the patent, there is no question that it does not extend to tables with glass tops, even if those tables appropriate the leg and apron features considered novel by the patentee. Master Design contends that it merely had "too much patentable material" in its original application. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. at 16.) If that is correct, the only way to serve the purposes of patent law is to require Master Design to obtain a second patent, not to allow it, after the fact, to enlarge the scope of the one patent it pursued. Europa's tables do not literally infringe the one patent Master Design chose to pursue.

## Doctrine of Equivalents

Master Design argues that, even if Europa's tables cannot literally infringe its patent, summary judgment is inappropriate because a jury could find that Europa's tables infringe its patent under the doctrine of equivalents. The doctrine of equivalents is an equitable doctrine designed for cases where there is no literal infringement, but liability is appropriate to prevent what is in essence a pirating of a patent. *See Texas Instruments*, 988 F.2d at 1173. The Supreme Court recently reaffirmed the vitality of the doctrine of equivalents in *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S. Ct. 1040, 137 L. Ed.2d 146, 41 U.S.P.Q.2d 1865 (1997) According to *Warner-Jenkinson*, a product that does not literally infringe a patent claim "may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product . . . and the claimed elements of the patented invention." *Id.*, 41 U.S.P.Q.2d at 1868. An accused product only infringes under this doctrine if it "contain[s] elements identical or equivalent to each claimed element of the patented invention." *Id.* at 1875. The Supreme Court adopted this position to ensure that the doctrine of equivalents does not conflict with the definitional and public notice functions of patent claims. *Id.* at 1871. The Federal Circuit has expressed a similar concern about this doctrine, noting that patent claims will not serve these functions unless "[a]pplication of the doctrine of equivalents is the exception, . . . not the rule." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 [20 USPQ2d 1456] (Fed. Cir. 1991).

After *Warner-Jenkinson*, the test for equivalence in a design patent infringement case is unclear. *Warner-Jenkinson*, which involved a utility patent rather than a design patent, specifically avoided choosing between the various tests lower courts have applied to determine equivalence with utility patents. 41 U.S.P.Q.2d at 1875-76. In pre-*Warner-Jenkinson* cases involving design patents, the *Gorham* test of similarity of ornamental appearance has been used to determine equivalence. *See, e.g., Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1190 [5 USPQ2d 1625] (Fed. Cir. 1988). It is difficult to reconcile *Warner-Jenkinson*'s focus on the equivalence of individual elements of a product with *Gorham*'s apparent focus on the overall effect of a design, and this Court is unaware of any cases that have applied *Warner-Jenkinson* in a design patent case.

In this case, however, it is not necessary to determine the test for design patent equivalence. As Europa argues, the doctrine of prosecution history estoppel bars Master Design from arguing that Design Patent No. 369,945 includes versions of its tables with glass tops like those which it removed from its application during the approval process.

[2] Prosecution history estoppel is a doctrine that bars patent holders from recapturing subject matter surrendered during the prosecution of their patents. *See Litton Sys., Inc. v. Honeywell, Inc.*, ___ F.3d ___, 1998 WL 156754, *5 [47 USPQ2d 1106] (Fed. Cir. 1998). The Supreme Court also addressed this doctrine in *Warner-Jenkinson*, where it noted that the doctrine is intended to further reinforce the definitional and public notice functions of patents by limiting the doctrine of equivalents. *See* 41 U.S.P.Q.2d at 1872-73. *Warner-Jenkinson* created a new scheme for applying prosecution history estoppel based on the reason for a change made to an application during prosecution. *Id.* at 1872-73. Contrary to Master Design's urging, however, *Warner-Jenkinson* did not limit the applicability of prosecution history estoppel to those cases in which a claim was amended to avoid prior art or to overcome an indefiniteness objection. Such a construction of the opinion runs counter to its repeated focus on "the role of claims in defining an invention and providing public notice." *Id.* at 1873. As the Federal Circuit has long held and reaffirmed after *Warner-Jenkinson*, amendments made for reasons other than patentability or even vol-

untary assertions not constituting amendments can give rise to an estoppel if the surrender is "is unmistakable enough that the public may reasonably rely on it." *Litton Sys.*, 1998 WL 156754 at *8; *see also Vehicular Technologies Corp. v. Titan Wheel Int'l Inc.*, ___ F.3d ___, 1998 WL 156722, *6 [46 USPQ2d 1257] (Fed. Cir. 1998) ("[T]hrough statements made during prosecution of a patent application, it can become evident that an asserted equivalent is beyond coverage under the doctrine of equivalents."). Other cases in which prosecution history estoppel has applied have also focused on the issue of public notice. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 952 [28 USPQ2d 1936] (Fed. Cir. 1993) ("The legal standard for determining what subject matter was relinquished is an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude, from the prosecution history, that the applicant gave up to procure issuance of the patent."); *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174 [26 USPQ2d 1018] (Fed. Cir. 1993) ("Unmistakable assertions made by the applicant to the Patent and Trademark Office (PTO) in support of patentability, whether or not required to secure allowance of the claim, also may operate to preclude the patentee from asserting equivalency between a limitation of the claim and a substituted structure or process step.") *Lemelson v. General Mills, Inc.*, 968 F.2d at 1202, 1208 [23 USPQ2d 1284] (Fed. Cir. 1992) ("Other players in the marketplace are entitled to rely on the record made in the Patent Office in determining the meaning and scope of the patent.")

There is no question that Master Design's surrender of the glass-top version of its table was unmistakable enough that the public, including Europa, could reasonably rely on it. In the case probably most similar to the case at hand, *Macbeth v. Gillinder*, 54 F. 169 (C.C.E.D. Pa. 1912), the court faced a suit in which a patentee's original application for a lamp chimney design had contained drawings of a "pearl top" and two other tops. *Id.* at 170. The Patent Office informed the patentee that all three designs could not be included in a single patent, so the patentee withdrew the designs other than the "pearl top." *Id.* The patentee then charged the defendant with patent infringement for selling a lamp chimney "substantially, if not absolutely, identical" with the "prism top" withdrawn from the patentee's original application. *Id.* The court ruled as follows:

> [The patentee] cannot be permitted to turn round after obtaining a patent on the only terms upon which the office would grant it, and after declaring by his conduct, and language as emphatic as he could employ, that this top is not embraced, hold those who have engaged in its manufacture, guilty of infringement. He is estopped by the circumstances under which the patent was obtained.

*Id.* The court also addressed the patentee's argument that estoppel should not apply because he had not amended the language of his claim, finding that the argument had "little force." *Id.* Master Design is in exactly the same position with respect to glass-top versions of its table. *See supra* at 4-6.

Other cases also support the application of prosecution history estoppel in this case. In one case, a patentee was estopped from claiming that its patent included a design that it had acknowledged but rejected as "most unsatisfactory" during the prosecution of the patent. *See Texas Instruments*, 988 F.2d at 1174. In another case, a patentee was estopped from claiming that its patent included a type of structure that, without amending its claim, it had specifically distinguished from its claim during prosecution. *See Hoganas*, 9 F.3d at 953; *see also Omark Indus., Inc. v. Carlton Co.*, 458 F. Supp. 449, 453 [201 USPQ 825] (D. Ore. 1978) (same). Master Design's surrender of the glass-top versions of this table was at least as clear as the surrenders that triggered prosecution history estoppel in each of these cases.

Master Design argues that prosecution history estoppel is inappropriate in this case because the requirement for restriction is not related to patentability but is simply a procedure driven by the PTO's administrative needs. (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 15.) Master Design also argues that it is "entitled to the same protection it would have received had it originally submitted only [one set of drawings]." (*See* id.) Both arguments ignore the basic foundation of prosecution history estoppel — public notice. This is not a case where Master Design had submitted only one drawing — one depicting wooden parquet tops. Had that been the case, the record would not show a withdrawal of the glass tops, and Europa might not have been entitled to rely on the fact that glass tops were not also covered by the patent.[3] Alternatively, if Master Design had obtained a separate patent for the glass-top

---

[3] If that were the case, Master Design's contention that glass and wood considered, within the industry, interchangeable as table tops might be relevant *See Warner-Jenkinson*, 41 U.S.P.Q.2d at 1874. In this case, however, that contention is irrelevant.

designs, Europa's tables might very well have infringed that patent. But in this case, where Master Design submitted and subsequently withdrew the glass-top designs from its only patent, and where these actions were clearly a part of the public record, Europa was entitled to rely on Master Design's unambiguous surrender of these designs. Prosecution history estoppel bars Master Design from relying of the doctrine of equivalents to prove infringement.

## CONCLUSION

Europa's T1195 tables do not literally infringe Master Design's properly construed Design Patent No. 369,045, and Master Design is barred from arguing infringement under the doctrine of equivalents by prosecution history estoppel. Therefore, Europa's Motion for Partial Summary Judgment on the Issue of Non-Infringement is GRANTED.

---

**U.S. District Court
Middle District of North Carolina**

Victus Ltd. v. Collezione Europa U.S.A. Inc.

No. 2:96CV00724

Decided August 4, 1998

### REMEDIES

1. **Monetary — Attorney's fees; costs — Patents — In general (§510.0905.01)**

Defendant in action for infringement of design patent is not entitled to award of attorneys' fees following plaintiff's voluntary dismissal of suit, since defendant in action dismissed without prejudice still faces risk of litigation on claim, and therefore cannot be considered "prevailing party" within meaning of 35 USC 285.

---

Action by Victus Ltd., d/b/a Master design Furniture, against Collezione Europa U.S.A. Inc. for infringement of design patent. Following plaintiff's voluntary dismissal of action without prejudice, defendant moves for award of attorneys' fees pursuant to 35 USC 285. Denied.

Related decision: 48 USPQ2d 1145.

Gilbert J. Andia Jr. and Howard A. MacCord Jr., of Rhodes, Coats & Bennett, Greensboro, N.C., for plaintiff.

Peter J. Juran, of Blanco, Tackabery, Combs & Matamoros, Winston-Salem, N.C., and Nicholas Mesiti, of Heslin & Rothenberg, Albany, N.Y., for defendant.

**Tilley, J.**

Plaintiff Victus, Ltd., d/b/a Master Design Furniture ("Master Design") voluntarily dismissed this case without prejudice on February 24, 1997. The only issue remaining is Defendant Collezione Europa U.S.A., Inc.'s ("Collezione") Motion for Attorney's Fees and Expenses [Doc. #8]. For the reasons expressed below, Collezione's Motion is DENIED.

I.

Collezione's request for attorney's fees and expenses is made pursuant to 35 U.S.C. § 285, which provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." This statute is designed to provide a court with discretion "where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1364 [13 USPQ2d 1967] (Fed. Cir. 1990) (quoting *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 [3 USPQ2d 1235] (Fed. Cir. 1982)). Although Collezione has devoted most of its briefs to the issue of whether this is an "exceptional" case, the more fundamental issue is whether Collezione can be considered a "prevailing party" after Master Design's voluntary dismissal. Because Collezione cannot be considered a prevailing party, its request for attorney's fees is denied.

The Fourth Circuit has published no opinions that squarely address the question of whether a defendant can be considered a prevailing party after a plaintiff takes a voluntary dismissal. In *Kollsman v. Cohen*, 996 F.2d 702 (4th Cir. 1993), the court held that a "dismissal of an action, whether on the merits or not, generally means the defendant is the prevailing party." *Id.* at 706. But *Kollsman* involved a dismissal with prejudice rather than a dismissal without prejudice like the one taken by Master Design.

[1] In a recent unpublished opinion, however, the Fourth Circuit directly answered the question arising in this case. In *Best Indus., Inc. v. CIS BIO Int'l, Inc.*, 134 F.3d