```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION

 3
    NATIONAL OILWELL VARCO, LP,      )
 4                                   )
       Plaintiff/Counter-Defendant,  )
 5                                   )   NO. H-06-CV-170
    VS.                              )   June 13, 2011
 6                                   )
    HYDRIL COMPANY, LP,              )
 7     Defendant/Counter-Claimant.   )

 8

 9
                        PRETRIAL CONFERENCE
10            BEFORE THE HONORABLE LYNN N. HUGHES

11

12

13
    For the Plaintiff/          Mr. John Raley
14  Counter-Defendant:          Mr. Robert M. Bowick
                                Raley & Bowick, LLP
15                              1800 Augusta Drive, Suite 300
                                Houston, Texas 77057
16
    For the Defendants/         Ms. Pamela L. Hohensee
17  Counter-Plaintiffs:         Yetter Coleman, LLP
                                909 Fannin, Suite 3600
18                              Houston, Texas  77010

19                              Bruce Slavin, RPR, CM
    Court Reporter:
20

21

22

23

24
    Proceedings reported by mechanical stenography and produced
25  by computer-aided transcription.
```

17:27

|  |  |  |
|---|---|---|
|  | 1 | THE COURT:  The lead counsel on this is Andrew L. |
|  | 2 | Jefferson, Jr.? |
|  | 3 | MR. BOWICK:  No, sir. |
|  | 4 | THE COURT:  Well, it says that.  Shouldn't we take |
| 17:27 | 5 | him off? |
|  | 6 | MR. BOWICK:  That's fine with me, Your Honor.  When |
|  | 7 | he was in the hospital before he died, his office was shut |
|  | 8 | down and we didn't have authority to take him off. |
|  | 9 | THE COURT:  In fact, get Dawna to take off all this |
| 17:27 | 10 | information about him and let's just leave his name there. |
|  | 11 | He was a dear friend of mine, one of the finest people and |
|  | 12 | lawyers.  The only problem is he liked my wife a lot better |
|  | 13 | than he liked me, but, then, everybody does. |
|  | 14 | And Timothy Johnson? |
| 17:27 | 15 | MR. BOWICK:  That was one of the lawyers at my |
|  | 16 | former firm, Your Honor.  They're no longer of record.  I |
|  | 17 | have asked them to file papers to withdraw as counsel. |
|  | 18 | THE COURT:  I will withdraw them. |
|  | 19 | MR. BOWICK:  That's fine.  I think Guy Matthews |
| 17:28 | 20 | might be on there.  He is no longer counsel. |
|  | 21 | THE COURT:  Right. |
|  | 22 | MR. BOWICK:  It should just be Mr. Raley and |
|  | 23 | myself. |
|  | 24 | THE COURT:  Well, those are the only people I have |
| 17:28 | 25 | seen lately. |

|  |  |  |
|---|---|---|
|  | 1 | I'm sorry Mr. Jefferson can't be here. |
|  | 2 | (Off-the-record discussion) |
|  | 3 | THE COURT: All right. I think another shot at |
|  | 4 | mediation is a good idea, but Varco doesn't want to do it. |
| 17:30 | 5 | I thought it might help. It might help even if it's |
|  | 6 | reluctant to do it. So, I am thinking about ordering |
|  | 7 | mediation. |
|  | 8 | MR. RALEY: Well, Your Honor, has, as you know, |
|  | 9 | absolute right to order it. My understanding is that there |
| 17:31 | 10 | was a rather extensive attempt at that early in the case, |
|  | 11 | which I understand that fact alone does not preclude any |
|  | 12 | further efforts. |
|  | 13 | But the point we are now -- as Your Honor is |
|  | 14 | aware, we are, originally, the plaintiffs in this case. We |
| 17:31 | 15 | have a good-faith belief that our client's patent has been |
|  | 16 | infringed by Hydril. We have a good-faith belief that |
|  | 17 | Hydril's patent that they're asserting against us is invalid |
|  | 18 | for several reasons. But because of where we are, as far as |
|  | 19 | the Court's rulings, Hydril is now the Plaintiff and they |
| 17:31 | 20 | want to know how much we want to pay them, and that's not a |
|  | 21 | position that's -- |
|  | 22 | THE COURT: I think that's what she's always had in |
|  | 23 | mind. |
|  | 24 | MR. RALEY: Right. I have no doubt whatsoever. |
| 17:32 | 25 | So, that's, really, an untenable position for us. We have |

|  |  |
|---|---|
|  | 1 every confidence going forward with litigation in whatever |
|  | 2 form.  So, I don't think that -- the short answer to your |
|  | 3 question is, Your Honor, I don't think that a mediation |
|  | 4 would do any good whatsoever.  Of course, if the Court wants |
| 17:32 | 5 to order it we will attend. |
|  | 6 THE COURT:  Mediation, like any litigation |
|  | 7 technique, should be applied when circumstances warrant it. |
|  | 8 The difference is the contours of the case.  The first time |
|  | 9 we did it it was right on at the beginning.  Now, that |
| 17:32 | 10 didn't work.  There's been some litigation.  The case has |
|  | 11 evolved. |
|  | 12 I believe there's been at least one evolution |
|  | 13 in National's corporate existence, hasn't there?  Didn't |
|  | 14 they acquire somebody since the case has been -- |
| 17:33 | 15 MR. BOWICK:  Not since this lawsuit, Your Honor. |
|  | 16 This lawsuit was filed -- I believe it was filed as National |
|  | 17 Oil Well Varco.  This case was filed in, I think, January of |
|  | 18 '06.  The merger of National Oil Well Varco had occurred in, |
|  | 19 I believe, March of 2005. |
| 17:33 | 20 THE COURT:  So, anyway -- |
|  | 21 MR. BOWICK:  They have acquired several companies |
|  | 22 since then, but not related to this lawsuit. |
|  | 23 MR. RALEY:  You may be thinking about Hydril and |
|  | 24 General Electric. |
| 17:33 | 25 THE COURT:  No.  I know it's evolved -- mainly, |

|  |  |
|---|---|
|  | 1 because she told me in a pleading when it happened. |
|  | 2          MR. RALEY:  I am fairly confident that mediation |
|  | 3 would begin with a demand from Hydril to pay restitution for |
|  | 4 their infringement of National Oil Well Varco's patent. |
| 17:34 | 5 And, so, the polarization between the parties is much |
|  | 6 farther now than it was before. |
|  | 7          THE COURT:  Okay.  I successfully -- I didn't |
|  | 8 mediate it, but I superintended the mediation between McNair |
|  | 9 and Bud Adams over a failed football game and "far apart" |
| 17:34 | 10 doesn't begin to describe it.  Your clients are just |
|  | 11 competitors.  I'm not sure how you describe it, but they |
|  | 12 were more than competitors.  They had more emotional baggage |
|  | 13 between them than any three families put together.  There |
|  | 14 was a good deal of animosity.  I think that all stems from |
| 17:34 | 15 the fact that the Astros had the lease from the County. |
|  | 16 Adams was always the sub-tenant.  Anyway, they settled.  So, |
|  | 17 it could work out under the most adverse circumstances. |
|  | 18          But I think a fresh look is worthwhile, |
|  | 19 because we're at the point where we all may have to invest a |
| 17:35 | 20 lot more in the process, and maybe one day or two at a time |
|  | 21 would be useful.  And, so, I'd like to do it here. |
|  | 22          Does anybody have any objection to Daryl |
|  | 23 Bristow, retired, of Baker Botts? |
|  | 24          MR. RALEY:  We'd like a chance to check into that, |
| 17:36 | 25 Your Honor.  I mean, sitting here today, I can't -- |

|  |  |  |
|--|--|--|
|  | 1 | THE COURT: I'm not going to guess how long he's |
|  | 2 | been retired. He's still a lawyer. He's older than I, but |
|  | 3 | he's still a lawyer, and he's doing arbitrations and |
|  | 4 | mediations and things. |
| 17:36 | 5 | MR. BOWICK: My only objection would be that the |
|  | 6 | entire Yetter firm all came out of Baker Botts and used to |
|  | 7 | work for him. |
|  | 8 | THE COURT: No. You would allow Daryl Bristow to |
|  | 9 | try any case no matter how sophisticated as long as it |
| 17:36 | 10 | didn't involve the more technical or intellectual. He |
|  | 11 | didn't have anything to do with patent law. And Yetter has |
|  | 12 | been gone 20 years. Right? |
|  | 13 | MS. HOHENSEE: Maybe 18. But our whole firm is not |
|  | 14 | from Baker Botts. |
| 17:37 | 15 | THE COURT: Are you from Baker Botts? |
|  | 16 | MS. HOHENSEE: I am. |
|  | 17 | MR. BOWICK: They get a tremendous amount of |
|  | 18 | referrals from Baker Botts still to this day. |
|  | 19 | THE COURT: But Bristow is gone and has been |
| 17:37 | 20 | gone -- |
|  | 21 | MR. RALEY: There is no sense of arguing, Your |
|  | 22 | Honor. You asked if we had any concerns and we -- |
|  | 23 | THE COURT: Ask your friends. Because he's doing |
|  | 24 | all kinds of arbitrations. |
| 17:37 | 25 | MR. RALEY: I know that he is a respected name, |

| | | |
|---|---|---|
| | 1 | Your Honor.  I do not deny that. |
| | 2 | THE COURT:  And he is a no-nonsense, no-posturing |
| | 3 | kind of guy and he will be able to sit down and he's spent |
| | 4 | his life talking to banking executives that he was |
| 17:37 | 5 | representing.  So, he's familiar with talking to |
| | 6 | businessmen.  I know several people who are wonderful |
| | 7 | humanist mediators.  They share feelings.  Mr. Bristow |
| | 8 | listens to what they say.  I think he can understand where |
| | 9 | they're coming from and suggest strategies and options and |
| 17:38 | 10 | things.  But he's a sophisticated business lawyer. |
| | 11 | So, that's my idea.  But check on it. |
| | 12 | MR. RALEY:  We'll inquire if he's ever represented |
| | 13 | Hydril or General Electric and those sorts of things. |
| | 14 | THE COURT:  No.  Obviously -- |
| 17:38 | 15 | MS. HOHENSEE:  And we have no objection. |
| | 16 | THE COURT:  Or National Varco or -- |
| | 17 | MR. RALEY:  Sure.  So, if you'd just give us a |
| | 18 | couple of days to look into that, I am sure -- |
| | 19 | THE COURT:  We need a sophisticated person who also |
| 17:38 | 20 | happens to be a lawyer who -- I thought about getting a |
| | 21 | retired executive from some oil business, but that didn't |
| | 22 | bring -- it got too complicated, because it would have to be |
| | 23 | not in the oil tool but close enough to it that, you know -- |
| | 24 | So, you're better off just with somebody with common sense |
| 17:39 | 25 | and a lot of experience in business litigation. |

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | (Off-the-record discussion)                                                  |
|       | 2  | THE COURT:  And I am sure there have been personnel                          |
|       | 3  | changes, but I need an operating person.                                     |
|       | 4  | MR. BOWICK:  We'll have to find somebody.  The two                           |
| 17:40 | 5  | gentlemen that came here four or five years ago, they're no                  |
|       | 6  | longer with the company.                                                     |
|       | 7  | MR. RALEY:  One with the company that would have                             |
|       | 8  | the most knowledge and would be the decision-maker is the                    |
|       | 9  | in-house counsel --                                                          |
| 17:41 | 10 | THE COURT:  No.  He's just that.  I don't want                               |
|       | 11 | human relations and the lawyer or a corporate secretary.  I                  |
|       | 12 | want somebody who makes stuff for them.                                      |
|       | 13 | I had a chemical patent case.  And, so, I                                    |
|       | 14 | ordered a mediation and I said give me two high-ranking but                  |
| 17:41 | 15 | still operating people.  Both of them brought 65-year-old                    |
|       | 16 | plant managers.  I had them in here with the lawyers and                     |
|       | 17 | explained the problem and I put them in the jury room and                    |
|       | 18 | then I told the lawyers funny stories for about an hour and                  |
|       | 19 | 20 minutes.                                                                  |
| 17:41 | 20 | They came back.  They had settled the deal                                   |
|       | 21 | with the patent lawyers' people and made two other business                  |
|       | 22 | deals.  One of them had -- I don't remember -- it was barges                 |
|       | 23 | that were going deadhead empty from St. Louis to                             |
|       | 24 | New Orleans.  The other one sent empty barges the other way.                 |
| 17:42 | 25 | So, they just did a barge-sharing agreement saving them both                 |

1 huge amounts of freight -- and I don't remember what the
2 other deal was -- and wanted to go have lunch.  The case was
3 over.
4       MR. RALEY:  It'd probably be an engineer on the
5 design team?  Is that what you're thinking?
6       THE COURT:  No.  I am thinking whoever is in charge
7 of the oil tool division and some engineer who's been doing
8 management.
9       MR. RALEY:  We'll look for something like that.
10       THE COURT:  But somebody who, if the oil tool
11 numbers are not right, somebody upstairs yells at him.  Not
12 the yeller.  Some guy that has got production numbers, got
13 performance numbers, got sales numbers, got applications,
14 the guy who talks to the design people.  Because design
15 engineers want to talk about their baby, their inventions.
16 They're their children and they love them dearly.
17       We need the practical guy, because,
18 ultimately, it's a business decision.  But it has to be
19 somebody with -- I would say somebody who would wears boots
20 daily.  Actually, I did want both sides to send somebody who
21 wore boots at work -- and not alligator cowboy boots.
22       MR. RALEY:  Steel-toed.
23       THE COURT:  That's right. If you don't wear steel-
24 toed boots you're not out paying attention.  I don't think
25 we need to get down there, but somebody who maybe started

```
         1   his career wearing steel-toed.
         2           MR. RALEY:  Got it.
         3           THE COURT:  Have you got one of those?
         4           MS. HOHENSEE:  We do.  We have Chuck Chauvier who
17:43    5   participated last time and he is now the president, but he
         6   came up all the way from engineer, engineering manager to
         7   president of Hydril.  I believe he'll be our representative.
         8           THE COURT:  I'm not saying you have to -- You're
         9   welcome to use whoever, but same criteria.
17:44   10           MS. HOHENSEE:  Yes, Your Honor.
        11           THE COURT:  Shall we set our meeting for August
        12   after vacations are over and the kids are getting ready to
        13   go back to school?
        14           MR. BOWICK:  Sounds good.
17:44   15           MS. HOHENSEE:  Yes.
        16           MR. RALEY:  Before the Court sends the letter on
        17   Mr. Bristow let me say for the record I have heard very good
        18   things about his professional reputation.  We just need to
        19   check -- maybe call his office and ask him if he's
17:44   20   represented Hydril or GE, just check on that and get back --
        21           THE COURT:  You might get a faster response by
        22   e-mailing him than I ask him.
        23           MR. RALEY:  Whatever the Court prefers.
        24           THE COURT:  Because I have used him before.  Let me
17:44   25   do that because he may just respond to me.
```

```
                1              And do you want me to check National Varco?
                2    Is there another major component?
                3              MR. BOWICK:  I think that's it, Your Honor.
                4              And, Your Honor, just so I can run it by my
17:45           5    client, do we know what the cost is per day for the --
                6              MR. RALEY:  Is it a one-day mediation we're
                7    discussing or --
                8              THE COURT:  I am going to block two days.  I hope
                9    for one day, but you can't tell.  I mean, I have had three
17:45          10    days that have succeeded and four days that haven't.  After
               11    four days I get impatient.  Actually, I have had a two-day
               12    where it didn't work, but they tried.
               13              If he told me, do you want me to have Glenda
               14    ask him?
17:46          15              MR. BOWICK:  If you don't mind, Your Honor.  I
               16    mean, I have seen some people who are 1,000 a day and some
               17    who are 10,000.
               18              THE COURT:  We need to be careful.  And look.  If I
               19    ever appoint a mediator or an arbitrator or a car hop or
17:46          20    anything and you don't think the fees are right let me know.
               21    I don't appoint my enemies, but I don't appoint my friends
               22    so they can take advantage of you.  The only way I know is
               23    if y'all tell me.
               24              And I did it.  I thought he was an old friend
17:46          25    on a very simple case.  I thought he overbilled and I
```

```
          1    whacked it until he underbilled, because that's not right.
          2              All right.  Does he let you have vacations?
          3              MS. HOHENSEE:  Not in August.  I don't know about
          4    Mr. Yetter.
17:48     5              MR. RALEY:  Okay.  Your Honor, are you staying the
          6    case until the mediation or --
          7              THE COURT:  Yes.  Because, otherwise, when it
          8    settles in the first 20 minutes, y'all would have done a lot
          9    of wasted work.
17:48    10              All right.  Let me get that done and Glenda
         11    will forward you whatever they are and let me know as soon
         12    as you can.
         13
         14              COURT REPORTER'S CERTIFICATE
         15         I, BRUCE SLAVIN, certify that the foregoing is a
         16    correct transcript from the record of proceedings in the
         17    above-entitled matter, to the best of my ability.
         18
         19                              s/Bruce Slavin
                                         BRUCE SLAVIN, RPR, CM
         20
         21
         22
         23
         24
         25
```